**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| TRAVIS BEAVER, LUZ PINEDA, and DENAH ALTOBELLI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs<br><br>v.<br><br>NISSAN OF NORTH AMERICA, INC, and NISSAN MOTOR CO., LTD.<br><br>Defendants | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Travis Beaver, Luz Pineda, and Denah Altobelli ("Plaintiffs"), by and through their attorneys, bring this action against Nissan of North America, Inc. and Nissan Motor Co., Ltd. ("Defendants" or "Nissan"), individually and on behalf of all others similarly situated, and alleges as follows:

## I. INTRODUCTION

1.      Plaintiffs brings this action individually and on behalf of all similarly situated persons ("Class Members") who purchased or leased any 2015 through 2021 Nissan Murano vehicle in the United States ("Class Vehicles") that was designed, manufactured, distributed, marketed, sold or leased by Defendants.

2.      Well before Nissan began manufacturing, marking and distributing the Class Vehicles, Nissan knew that the Class Vehicles contained one or more design and/or manufacturing defects that can cause their continuously variable transmission ("CVT") to malfunction ("CVT Defect"). A "CVT" is a type of automatic transmission that does not use conventional gears to achieve the various ratios required during normal driving. Instead, it uses a segmented steel belt between pulleys that can be adjusted to change the reduction ratio in the transmission. This is supposed to occur smoothly and continuously. Like a conventional transmission, a CVT is

electronically controlled by a Transmission Control Module ("TCM"). On information and belief, the Class Vehicles all come equipped with the same or substantially similar CVT.

3.     The 2003 Nissan Murano was the first U.S. vehicle that Nissan equipped with a CVT transmission. Since 2003, Nissan has implemented CVT transmissions in many of its vehicles manufactured for the U.S. market. Nissan's widespread adoption of CVT technology, however, has been consistently plagued by design and manufacturing defects that render CVT-equipped Nissan vehicles unreliable and unreasonably dangerous to operate.

4.     Like many other Nissan owners, numerous Class Vehicle owners have reported a significant delay in their Class Vehicle's response while attempting to accelerate from both from a stop and while in motion. This delay in response is often accompanied by the engine revving while the driver depresses the gas pedal with little to no increase in vehicle speed. Class Vehicle owners have also experienced and reported stalling, jerking, lurching, juddering, and/or shaking while operating their Class Vehicles, as well as premature transmission failure.

5.     The CVT Defect has been documented to occur without warning during vehicle operation and poses an extreme and unreasonable safety hazard to drivers, passengers and pedestrians for obvious reasons. These safety hazards include being unable to maintain the proper speed to integrate seamlessly into the flow of traffic, especially on highways or freeways, putting drivers at risk of being rear ended or otherwise causing an accident unless they pull off the road.

6.     In addition to these obvious safety hazards, the cost to repair the CVT Defect can be exorbitant. The Class Vehicles thus differ materially from the product Nissan intended to sell. Nissan intended to produce vehicles with CVTs that shift smoothly and continuously. Instead, Nissan produced vehicles that do not accelerate when prompted to accelerate, and that shake, shudder, jerk and judder.

7.     Plaintiffs are informed and believe, and based thereon allege, that Defendants knew the Class Vehicles were defective and not fit for their intended purpose of providing consumers with safe and reliable transportation at the time of the sale and thereafter. Defendants have actively concealed the true nature and extent of the CVT Defect from Plaintiffs and the other Class

Members, and failed to disclose it to them, at the time of purchase or lease and thereafter. Had Plaintiffs and prospective Class Members known about the CVT Defect, they would not have purchased the Class Vehicles or would have paid less for them.

8. Plaintiffs are informed and believe, and based thereon allege, that despite notice of the CVT Defect from, among other things, pre-production testing, numerous consumer complaints, warranty data, dealership repair orders and prior experience with earlier model vehicles with the same or substantially similar CVTs, Defendants have not recalled the Class Vehicles to repair the CVT Defect, have not offered their customers a suitable repair or replacement free of charge, and have not offered to reimburse all Class Vehicle owners and leaseholders the costs they incurred relating to diagnosing and repairing the CVT Defect.

9. Plaintiffs are further informed and believe, and based thereon allege, that despite being on notice of the CVT Defect, Defendants regularly deny the existence of the CVT Defect until after consumers' five (5) years/60,000 miles New Vehicle Limited Warranty Powertrain Coverage ("Powertrain Warranty") has expired or require payment to repair the CVT Defect even while the Class Vehicles are under warranty.

10. Nissan knew of and concealed the CVT Defect that is contained in every Class Vehicle, along with the attendant dangerous safety problems and associated repair costs, from Plaintiffs and the other Class Members both at the time of sale or lease and thereafter. As a result of their reliance on Defendants' omissions, owners and lessees of the Class Vehicles have suffered ascertainable loss of money, property, and/or loss in value of their Class Vehicles.

## II.   PARTIES

### A.   Plaintiffs

### Travis Beaver (Maryland)

11. Plaintiff Travis Beaver resides in Hilton, New York. In or around March 2019, Mr. Beaver purchased a new 2018 Nissan Murano from Criswell Nissan in Germantown, Maryland. Prior to purchase, Mr. Beaver spoke with a dealer sales representative about the vehicle, inspected the Monroney sticker posted by Nissan on the vehicle and test drove the vehicle. Mr. Beaver was

never informed by the dealer sales representative that the vehicle suffered from the CVT Defect and relied upon this fact in purchasing the vehicle. Had Mr. Beaver been informed that his vehicle suffered from the CVT Defect, he would not have purchased it. Mr. Beaver's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Nissan.

12.     Mr. Beaver's vehicle has exhibited the CVT Defect on numerous occasions. For example, when attempting to accelerate Mr. Beaver's vehicle hesitates, jerks and shudders. Mr. Beaver brought the vehicle to Antwerp Nissan in Clarksville, Maryland, to complain of the problems he was experiencing. The dealer claimed that it could not replicated the problems and did not offer a repair or replacement.

13.     At all times, Mr. Beaver has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Luz Pineda (Massachusetts)**

14.     Plaintiff Luz Pineda resides in Revere, Massachusetts. In or around July 2015, Ms. Pineda purchased a new 2015 Nissan Murano from Kelly Nissan in Lynnfield, Massachusetts. Prior to purchase, Ms. Pineda spoke with a dealer sales representative about the vehicle, inspected the Monroney sticker posted by Nissan on the vehicle and test drove the vehicle. Ms. Pineda was never informed by the dealer sales representative that the vehicle suffered from the CVT Defect and relied upon this fact in purchasing the vehicle. Had Ms. Pineda been informed that her vehicle suffered from the CVT Defect, she would not have purchased it. Ms. Pineda's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Nissan.

15.     Ms. Pineda's vehicle has exhibited the CVT Defect on numerous occasions. For example, when attempting to accelerate from a stop and while in motion, Ms. Pineda's vehicle jerks. The vehicle also jerks when Ms. Pineda shifts into reverse. In addition, the vehicle hesitates when Ms. Pineda attempts to accelerate from a stop.

16.     At all times, Ms. Pineda has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Denah Altobelli (Florida)**

17.     Denah Altobelli resides in Coral Springs, Florida.  In or around October 2015, Ms. Altobelli purchased a new Nissan Murano from Harbor Nissan in Port Charlotte, Florida. Prior to purchase, Ms. Altobelli spoke with a dealer sales representative about the vehicle, inspected the Monroney sticker posted by Nissan on the vehicle and test drove the vehicle.  Ms. Altobelli was never informed by the dealer sales representative that the vehicle suffered from the CVT Defect and relied upon this fact in purchasing the vehicle.  Had Ms. Altobelli been informed that her vehicle suffered from the CVT Defect, she would not have purchased it.  Ms. Altobelli's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Nissan.

18.     Ms. Altobelli's vehicle exhibited the CVT Defect and, ultimately, required a complete CVT replacement.  Prior to her CVT replacement, Ms. Altobelli's vehicle developed a judder.  In our about the end of August 2022, Ms. Altobelli's vehicle began juddering and then died leaving her stranded in the middle of the street.  Ms. Altobelli was forced to push the vehicle to the side of the road and had it taken at Aaction Transmission, a nearby transmission repair shop ("Aaction").   Aaction replaced the entire CVT assembly, noting the vehicle had stored the following Diagnostic Trouble Code "DTC" -  "TRANSMISSION CODE – P17F1 CVT JUDDER (C/V CHECK)."  As discussed below, Nissan has issued numerous Technical Service Bulletins ("TSBs") to its dealers regarding this condition over the years.  Although Ms. Altobelli's repair was covered by an extended service contract, she was forced to pay a $250 deductible for her repair.  Additionally, she was provided with a "remanufactured" CVT which, on information and belief, is similarly defective.

19.     At all times, Ms. Altobelli has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**B.     Defendants**

20.     Defendant Nissan North America, Inc. ("NNA") is a California corporation with its principal place of business located at One Nissan Way, Franklin, Tennessee 37067 and doing business in Tennessee and throughout the United States.

21.     Founded in 1933 and headquartered in Yokohama, Japan, Defendant Nissan Motor Co., Ltd. ("NML") is a corporation organized under the laws of Japan.  NML manufactures and distributes automobiles and related parts.  It also provides financing services.  NML delivers a comprehensive range of products under various brands that are manufactured in Japan, the United States, Mexico, the United Kingdom and other countries.  NML is the parent and 100% owner of NNA.

22.     At all relevant times, NNA and NML were engaged in the business of designing, manufacturing, marketing, distributing, and selling automobiles, including but not limited to the Class Vehicles, and other motor vehicles and motor vehicle components, in Tennessee and throughout the United States.

23.     Whenever, in this Complaint, reference is made to any act, deed or conduct of Defendants, the allegation means that Defendants engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, employees or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Defendants.

### III.     JURISDICTION

24.     This is a class action.

25.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The aggregated claims of the individual class members exceed the sum value of $5,000,000, exclusive of interests and costs.  This court also has federal question jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiffs' claims under the Magnuson-Moss Act arise under federal law.  This Court has personal jurisdiction over NNA because its principal place of business is in Franklin, Tennessee, and Defendants' otherwise have sufficient minimum contacts with Tennessee, and/or otherwise intentionally avails themselves of the markets within Tennessee, through the promotion, sale, marketing and distribution of their vehicles in Tennessee, so as to render the exercise of jurisdiction by this Court proper and necessary.

## IV.   VENUE

26.    Venue is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred within the Middle District of Tennessee.

## V.   NISSAN'S KNOWLEDGE OF THE CVT DEFECT

27.    For years, Nissan has designed, manufactured, distributed, sold, and leased the Class Vehicles.  Upon information and belief, Defendants have sold, directly or indirectly through dealers and other retail outlets, many thousands of Class Vehicles nationwide.

28.    Plaintiffs and Class Members are intended third-party beneficiaries of contracts between Nissan and its dealerships; specifically, they are the intended beneficiaries of Nissan's warranties.  The dealerships were not intended to be the ultimate consumers of the Class Vehicles, and the warranty agreements were designed for and intended to benefit the ultimate consumers only.

29.    The CVT Defect causes the Class Vehicles' to unexpectedly malfunction by hesitating, stalling, jerking, lurching, revving, shaking, juddering and/or failing prematurely.  The CVT Defect presents a safety hazard that renders the Class Vehicles unreasonably dangerous to consumers due to, *inter alia*, the impact of the Defect on driver's ability operate the Class Vehicle as expected.

30.    Plaintiffs are informed and believe, and based thereon allege, that, prior to placing the Class Vehicles in the stream of commerce, Nissan became aware of the CVT Defect through sources not available to Plaintiffs and Class Members, including, but not limited to, pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to Nissan's network of dealers and directly to Nissan, aggregate warranty data compiled from Nissan's network of dealers, testing conducted by Nissan in response to consumer complaints, and repair order and parts data received by Nissan from Nissan's network of dealers.  On information and belief, Nissan actively monitors

and records consumer complaints made to Nissan's network of dealers as well as all service and repair work done related to the CVT Defect at its network of dealers

31.     Nissan's CVT has been plagued with the same or similar recurrent problems (i.e., hesitation, shaking, juddering, premature failure, etc.) for over a decade.  In 2009 Nissan voluntarily doubled the powertrain warranty coverage of 5 years/60,000 miles to 10 years/120,000 miles for a large part of its fleet, including the 2003-2010 Murano; 2007-2010 Versa SL; 2007-2010 Sentra; 2007-2010 Altima; 2007-2010 Maxima; 2008-2010 Rogue; and 2009-2010 Cube.[1] Nissan also reported that "in the unlikely event that your vehicle's transmission should need repair beyond the extended warranty period we are working to decrease the cost of repair."[2]

32.     Nissan continued to experience such trouble with its CVTs that in December 2013 Nissan's then-CEO, Carlos Ghosn, announced that Nissan would increase its oversight of CVT supplier JATCO, Ltd.[3]  Nissan further explained that it was necessary to increase its oversight of JATCO because continued customer service issues had begun to cut into Nissan's profits.[4]  CVT issues, however, continue to plague Nissan vehicles.

33.     TSBs issued by Nissan to its dealers, and other remedial actions it has taken concerning the Class Vehicles and other vehicles with the same or substantially similar CVT, evidence Nissan's knowledge of the CVT Defect.

34.     On information and belief, the 2015-2021 Nissan Murano has a the same or a substantially similar transmission as other recent-model Nissan vehicles equipped with a CVT. Nissan has extended the warranty on many of these vehicles from five years/60,000 miles to seven years/84,000 miles and offered to reimburse owners and lessees who paid for transmission-related

---

[1] Frequently Asked Questions, available at:
https://web.archive.org/web/20100323050249/http://www.nissanassist.com/faqs.php?menu=3.
[2] *See* Customer Satisfaction Program, CVT Program Details available at:
https://web.archive.org/web/20100124032242/http://www.nissanassist.com/ProgramDetails.php?menu=2.
[3] Nissan Presses Jatco to end CVT glitches, Automotive News at:
https://www.autonews.com/article/20131202/OEM10/312029972/nissan-presses-jatco-to-end-cvt-glitches (Dec. 2, 2013).
[4] *Id.*

repairs during the extended warranty period in connection with class action settlements. *See, e.g., Gann, et al. v. Nissan North America, Inc.*, Case No. 3:18-cv-00966 (M.D. Tenn.) (warranty extension and reimbursement program applicable to 2013-2016 Nissan Altima vehicles equipped with a CVT); *Stringer, et al. v. Nissan North America, Inc.*, Case No. 3:21-cv-00099 (M.D. Tenn.) (warranty extension and reimbursement program 2014-2018 Nissan Rogue and 2015-2018 Nissan Pathfinder vehicles equipped with a CVT). Nissan has offered no such relief to 2015-2021 Murano owners and lessees.

35.     Nissan has issued scores of TSBs for the Class Vehicles' CVTs. In many instances, Nissan simply updated these TSBs to include later-model vehicles as it continued to manufacture CVTs with the same fundamental flaws.

36.     For example, on September 10, 2015 Nissan issued TSB NTB15-015b applicable to the 2015 Murano, among other CVT-equipped vehicles, in the event that "[t]he customer reports a transmission judder (shake, shudder, single or multiple bumps or vibration)" and DTC P17F0 or P17F1 (both relating to CVT judder) is stored. This TSB prescribes various service procedures, including but not limited to complete replacement of the CVT assembly. Similar TSBs were issued by Nissan over the years to encompass additional Class Vehicle model years. For example, on March 9, 2022 Nissan issued NTB17-039O applicable to the 2015-2021 Murano, among other CVT-equipped vehicles. This TSB similarly prescribes various service procedures in the event that the customer reports a transmission judder and DCT P17F0 or P17F1 is stored.

37.     On April 7, 2016 Nissan issued TSB NTB15-013b applicable to the 2015-2016 Murano, among other CVT-equipped vehicles, which cautions:

> **IMPORTANT**: Metal debris and friction material may become trapped in the radiator, cooling hoses, bypass valve or external CVT fluid cooler. This debris can contaminate the newly serviced transmission, control valve or torque convertor. In severe cases this debris can block or restrict flow and may cause damage to the newly serviced CVT.

This TSB goes on to advise technicians that when a CVT, control valve or torque convertor replacement is necessary the transmission fluid coolers must be flushed. This TSB was later

amended to include all Murano model years from 2015 through 2020. *See* TSB NTB15-013F issued February 19, 2021.

38.   Nissan has continued to issue TSBs addressing Class Vehicle CVT issues.

39.   On information and belief, Defendants issued the above TSBs to address problems being caused by the CVT Defect. Defendants had and have a duty to disclose the CVT Defect and the associated repair costs to Class Vehicle owners, among other reasons, because the Defect poses an unreasonable safety hazard; because Defendants had and have exclusive knowledge and/or access to material facts about the Class Vehicles and their CVTs that were and are not known to or reasonably discoverable by Plaintiffs and other Class Members; and, because Defendants have actively concealed the CVT Defect from their customers. Further, because the none of the above TSBs were issued as part of a formal recall, they were much more likely to be overlooked by dealers, and unknown to consumers.[5]

## VI.   EXAMPLE CONSUMER COMPLAINTS

40.   Hundreds, if not thousands, of purchasers and lessees of the Class Vehicles have experienced the CVT Defect.

41.   Nissan monitors consumer complaints made to the National Highway Traffic Safety Administration ("NHTSA") and, on information and belief, elsewhere on the Internet. Federal law requires automakers like Nissan to be in close contact with the NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to the NHTSA, including field reports, customer complaints, and warranty data. *See* Transportation Recall Enhancement, Accountability and Documentation ("TREAD") Act, Pub. L. No. 106-414, 114 Stat.1800 (Nov. 1, 2000).

---

[5] When a vehicle identification number is entered into a dealer computer, the dealer is automatically instructed to perform applicable recalls. Dealers generally search for TSBs based on customer complaints, which requires them to often sift through multiple TSBs and attempt to interpret which, if any, are applicable.

42.    The following example complaints filed by consumers with the NHTSA and which continue to accrue demonstrate that the CVT Defect is a widespread, dangerous and unresolved problem that has continued with Nissan CVT-equipped Murano vehicles through time unabated from one model year to the next.[6]

**2013 Nissan Murano**

**NHTSA ID Number: 10990499 Incident Date May 18, 2017:** TRANSMISSION FAILURE @ 130K MILES. VEHICLE STOPS MOVING. ALMOST CAUSED AN ACCIDENT.

**NHTSA ID Number: 10990516 Incident Date May 18, 2017:** NISSAN TRANNY FAILURE. HARD SHIFTING AND STICKING. WAS TOLD BY MARTIN TRANNY THAT THIS IS DEALERSHIP ONLY AND HAVE BEEN TOLD BY THEM THAT AT LEAST 30 PROBLEMS HAVE BEEN REPORTED TO THEM AND THEY SENT THEM TO THE DEALERSHIP. THE DEALERSHIPS ARE FAILING TO REPORT THE NUMBERS IN REGARDS TO THE ISSUES WITH THE TRANNY.

**NHTSA ID Number: 11299794 Incident Date August 3, 2019:** ON AUGUST 3, 2019 MY WIFE AND I WERE DRIVING OUR 2013 MURANO ON A TWO-LANE STATE HIGHWAY (COLORADO 133) BETWEEN REDSTONE AND MARBLE WHEN WITHOUT WARNING THE TRANSMISSION STOPPED WORKING, LEAVING THE ENGINE RUNNING NORMALLY. IT WAS LIKE THE CAR SHIFTED INTO NEUTRAL. WE WERE THEN COASTING ON THE HIGHWAY WHILE WE LOOKED FOR A SAFE PLACE TO STOP ON THE SHOULDER OF THE ROAD OUT OF THE LANE OF TRAFFIC. FORTUNATELY THE CAR FOLLOWING US WAS NOT TOO CLOSE TO BE ENDANGERED BY OUR LOWER SPEED. THIS WAS A DANGEROUS CONDITION. THE ODOMETER READ 87,861 MILES. WE HAD OWNED THE VEHICLE FOR ALMOST 3 YEARS AT THAT POINT AND HAD DRIVEN IT IN A NORMAL FASHION. WE HAD NOT TOWED ANYTHING NOR DRIVEN OFF ROAD OR EXPOSED THE CAR TO ANY HAZARDOUS CONDITIONS. ULTIMATELY THE CAR HAD TO BE TOWED TO THE NEAREST DEALER, LOCATED IN GRAND JUNCTION, COLORADO, 121 MILES AWAY, TO HAVE THE TRANSMISSION REPLACED. AT THAT TIME WE LEARNED THAT THE TRANSMISSION WAS THE CVT MODEL USING BELTS AND NOT GEARS. THE DEALER TOLD US THE BELTS HAD SHREDDED INSIDE THE TRANSMISSION. THE NORMAL 50,000 MILE WARRANTY HAD PASSED, SO WE WERE FACED WITH REPLACING THE TRANSMISSION AT OUR OWN EXPENSE, APPROXIMATELY $4,000. WE THINK THIS IS UNACCEPTABLE WHEN WE HEAR OF CARS GOING INTO THE UPPER 100,000'S AND EVEN 200,000 MILES ON THE SAME TRANSMISSION. WE ALSO LEARNED THAT NISSAN HAD PROBLEMS WITH EARLIER CVT-EQUIPPED CARS AND EXTENDED THE WARRANTY TO 100,000 MILES, BUT THE 2013 MODEL YEAR HAD NOT EXPERIENCED ENOUGH FAILURES TO JUSTIFY INCREASING THE WARRANTY PERIOD. BASICALLY, WE THINK 87,861 MILES IS UNACCEPTABLE FOR THE LIFE OF A TRANSMISSION. WE HOPE NISSAN WILL COMPENSATE US FOR OUR EXPENSES.

---

[6] Spelling and grammatical mistakes reproduced as in the original.

**2014 Nissan Murano**

**NHTSA ID Number: 11131676 Incident Date September 14, 2018:** DRIVING MOUNTAIN TERRAIN ON HWY 87 NORTH IN THE DESERT HEAT NEAR PHOENIX THE VEHICLE LOST POWER AND WOULD NOT ACCELERATE PROPERLY. WHEN TAKEN TO THE DEALERSHIP WE WERE TOLD THAT IT WAS SOMETHING THAT THEY SEE FREQUENTLY WHEN DRIVING LONG DISTANCES, UP MOUNTAINS OR IN EXTREME HEAT. ALSO TOLD BY NISSAN CONSUMER AFFAIRS REP THAT SHE WAS WORKING ON SEVERAL SIMILAR CASES, BUT A RESOLVE IS MADE ON A CASE BY CASE BASIS. UPON DOING RESEARCH NISSAN HAS HAD MANY PROBLEMS WITH THE CVT TRANSMISSIONS. WE FEEL THAT THE TRANSMISSION NOT WORKING PROPERLY IS A HUGE SAFETY CONCERN, AS YOU CANNOT ACCELERATE PROPERLY IF NEED BE, DRIVING ON THESE MOUNTAIN TERRAINS IS DANGEROUS ENOUGH WHEN YOU CAN ACCELERATE PROPERLY. NISSAN CONSUMER AFFAIRS HAS YET TO SAY WHETHER THEY CAN PROVIDE A RESOLUTION.

**NHTSA ID Number: 11161053 Incident Date December 12, 2018:** TRANSMISSION SLIPPING AND DROPPING GEARS AT 30,000 MILES. I WANT TO MAKE A COMPLAINT SO THEY HAVE TO REPLACE THESE

**NHTSA ID Number: 11361990 Incident Date September 30, 2020:** MY CVT TRANSMISSION IS SHAKING, SHUDDERING,VIBRATING.. I BROUGHT TO WALLACE NISSAN WITH 103K ON IT AND WAS TOLD IT WAS NOT PART OF THE RECALL..THERE IS CURRENTLY A BIG RECALL ON NISSAN CVT TRANSMISSIONS AND THEY EXTENDED TO 10YRS 120K. I CONTACTED NIASSAN CASE # 42026948 AND THEY SAY ITS NOT PART OF RECALL..THIS HAS BEEN GOING ON OVER A MONTHBELIEVE THERE IS ALSO A PROBLEM WITH THE ONES IN THE MURANO...

**NHTSA ID Number: 11425015 Incident Date July 7, 2021:** TRANSMISSION FAILING WHILE DRIVING. HESITATED WHILE DRIVING THEN WOULDN'T GO

**NHTSA ID Number: 11424622 Incident Date June 22, 2021:** THE CONTACT OWNS A 2014 NISSAN MURANO. THE CONTACT STATED THAT THERE WAS A DELAY IN RESPONSE WHILE THE VEHICLE WAS SHIFTING GEARS. THE CHECK ENGINE WARNING LIGHT WAS ILLUMINATED INDICATING THAT THE ENGINE WAS OVERHEATING. THE CONTACT STATED THAT WHENEVER THE ACCELERATOR PEDAL WAS DEPRESSED, THE VEHICLE WOULD FAIL TO RESPOND. THE FAILURE WOULD OCCUR AFTER DRIVING THE VEHICLE FOR APPROXIMATELY AN HOUR. THE CONTACT HAD TAKEN THE VEHICLE TO THE DEALER WHO DIAGNOSED THAT THE TRANSMISSION FAILED. THE MECHANIC REPLACED THE BATTERY. THERE WAS NO REPAIR PERFORMED ON THE TRANSMISSION. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 55,000.

**2015 Nissan Murano**

**NHTSA ID Number: 10971842 Incident Date April 7, 2017:** AT 20K MILES IN OUR 2015 NISSAN MURANO, WE EXPERIENCED THE CAR CHUGGING AT SPEEDS UNDER

15MPH, TURNING A CORNER, ACCELERATING FROM A STOP. THE CHUGGING WAS FOLLOWED BY ENGINE REVVING. THIS WAS FOLLOWED 2 DAYS LATER BY COMPLETE FAILURE WHILE DRIVING AT HIGHWAY SPEEDS. THE CAR WOULD NOT ACCELERATE AT ALL. IT HAD TO BE TOWED TO THE DEALERSHIP. THE SERVICE ENGINE LIGHT CAME ON AFTER THE ENGINE FAILED. NISSAN CANNOT DETERMINE A CAUSE AND IS REPLACING THE TRANSMISSION

**NHTSA ID Number: 11030070 Incident Date September 15, 2017:** CVT SHUDDERS AT LOW SPEEDS 20 - 40 MPH, THE FEELING IS AS IF THE GEARS ARE JAMMING AND BANGING AGAINST EACH OTHER; IMMEDIATELY RELEASING ACCELERATOR AND PRESSING FOR HARDER ACCELERATION TEMPORARY SUPPRESSES THIS BEHAVIOR. ANY INCLINES WHERE CAR SLOWS DOWN AND RPM FALLS CAN LEAD TO REOCCURRENCE OF THE SAME. HAPPENS 2/3 TIMES WHEN THESE CONDITIONS DESCRIBED ABOVE HAPPEN. I BELIEVE THE 'D'-STEP ARTIFICIAL SHIFTER TECHNOLOGY IS GOING OUT OF SYNC WITH REST OF TRANSMISSION ROTATION SPEED AND CAUSING THE GEARS TO GRIND DURING THOSE D-STEP ADJUSTMENTS.

**NHTSA ID Number: 11119814 Incident Date May 1, 2016:** CAR HESITATES WHEN ACCELERATING CAUSING A DANGER WHEN CAR DOES NOT GO AS EXPECTED WHEN PULLING INTO TRAFFIC. IT ALSO JERKS AND SHUDDERS AT LOWER SPEEDS, THE CAR SHAKES SOMEWHAT VIOLENTLY AND WILL STOP IF YOU FLOOR THE GAS PEDAL. BOUGHT THE CAR BRAND NEW FROM DEALER AND HAVE BROUGHT IN FOR THE ISSUE TO BE TOLD THE COMPUTER DOESN'T SEE A PROBLEM. I DRIVE THE CAR DAILY I KNOW THERE IS AN ISSUE AND IT IS DANGEROUS TO DRIVE WHEN IT CHOOSES NOT TO GO WHEN ACCELERATING.

**NHTSA ID Number: 11268684 Incident Date September 1, 2019:** WHEN ACCELERATING FROM A STOP OR AT LOW SPEED, TRANSMISSION JUDDERS AND CAUSES THE CAR TO LUNGE AND VIBRATE TILL IT GETS TO A HIGHER RPM. AT A CERTAIN RPM, THE CAR CAN SIMPLE LUG REPEATEDLY IF THE SPEED IS HELD CONSTANT. THE CAR STORES AN ERROR CODE AND THE FIX PER THE DEALER IS TO REBUILD THE TRANSMISSION. MY VEHICLE HAS THIS ISSUE AT ONLY 39,200 MILES. WHILE NISSAN CREATED A SERVICE BULLETIN FOR THIS ISSUE, AND WAS REPAIRED UNDER WARRANTY, A REPAIR THIS MAJOR SHOULD BE A RECALL BECAUSE OF HOW EXPENSIVE IT WOULD BE TO REPAIR OUT OF WARRANTY. BASED ON THE REPAIR ORDER I WAS PROVIDED, THIS WOULD'VE COST OVER $1,600 FOR PARTS ALONE, AND THE DEALER NEEDED TO KEEP THE CAR FOR A FULL WEEK. MULTIPLE ANECDOTAL REPORTS OF THIS ISSUE CAN BE FOUND AT HTTPS://WWW.NISSANMURANO.ORG/THREADS/ENGINE-CVT-HORRIBLE-SKIPPING-AND-LUNGING.186778/

**NHTSA ID Number: 11298122 Incident Date June 1, 2016:** CAR HESITATES WHEN ACCELERATING CAUSING A DANGER WHEN CAR DOES NOT GO AS EXPECTED WHEN PULLING INTO TRAFFIC. IT ALSO JERKS AND SHUDDERS AT LOWER SPEEDS, THE CAR SHAKES SOMEWHAT VIOLENTLY AND WILL STOP IF YOU FLOOR THE GAS PEDAL. BOUGHT THE CAR BRAND NEW FROM DEALER AND HAVE BROUGHT IN FOR THE ISSUE TO BE TOLD THE COMPUTER DOESN'T SEE A PROBLEM. I DRIVE THE CAR DAILY I KNOW THERE IS AN ISSUE AND IT IS DANGEROUS TO DRIVE WHEN IT CHOOSES NOT TO GO WHEN ACCELERATING. IT HAS BEEN A PROBLEM SINCE I BOUGHT THE CAR AND HAVE COMPLAINED TO THE DEALERSHIP NUMEROUS TIMES.

**2016 Nissan Murano**

**NHTSA ID Number: 11102636 Incident Date December 1, 2017:** TL* THE CONTACT OWNS A 2016 NISSAN MURANO. AFTER DRIVING VARIOUS SPEEDS FOR MORE THAN THIRTY MINUTES, THE VEHICLE SUDDENLY BECAME UNRESPONSIVE WHEN THE ACCELERATOR PEDAL WAS DEPRESSED. THE RPMS INCREASED, BUT THE SPEED DID NOT. ALSO, THE CHECK ENGINE INDICATOR ILLUMINATED. THE VEHICLE WAS TAKEN TO WORLD CAR NISSAN (12908 NORTH INTERSTATE HWY 35 BLDG 1, SAN ANTONIO, TX) WHERE IT WAS DIAGNOSED THAT THE TRANSMISSION WAS FAULTY. THE TRANSMISSION WAS REPLACED AND THE FAILURE WAS REMEDIED. IN ADDITION, THE WINDSHIELD WIPER PUMP WOULD BECOME CLOGGED WITH DEBRIS AND FAILED TO OPERATE CORRECTLY. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE, BUT NO SOLUTION WAS OFFERED. THE FAILURE MILEAGE WAS 89,000.

**NHTSA ID Number: 11440886 Incident Date September 2, 2021:** I AM HAVING TRANSMISSION ISSUES. THE CAR VIBRATES WHEN I AM DRIVING AND ACCELERATING BETWEEN 15-50MPH. I ALSO HAVE WATER COMING IN MY VEHICLE AND CAUSING MOLD FROM THE PASSENGER SIDE. I HAVE TAKEN THE CAR TO 3 DEALERS AND I HAVE CONTACTED NISSAN. THERE HAS NOT BEEN A RESOLUTION YET. I HAD THE TRANSFER CASE REPAIRED TWICE WITHIN LESS THAN A MONTH AT A NISSAN DEALER. THE VIBRATING/GROWLING NOISE IS STILL PRESENT. I SIMPLY WANT MY CAR TO BE FIXED

**NHTSA ID Number: 11348736 Incident Date August 10, 2020:** IN JULY LEAVING THE STORE I PUT THE CAR IN RESERVE TO COME OUT THE PARKING SPOT NOTHING HAPPEN TURN OFF THE CAR RESTART AND PUT THE CAR AGAIN INTO REVERSE STIL NOTHING HAPPENED THEN O TRY TO PUT THE CAR INTO PARK AND IT JUMP FORWARD. TWO WEEKS LATER THE SAME ISSUE AGAIN BUT PUT IT INTO DRIVE IT DIDN'T EVEN MOVE THIS IS A 2016 NISSAN MURANO THAT I PURCHASE AT 43K MILES. NOW TOOK IT TO THE DEALER I NEED A NEW TRANSMISSION AT $5500 THIS CAR ONLY HAS 75K MILES NEVER EXPECT FOR IT TO BE OUT OF WARRANTY. NOW IM STUCK PAYING FOR A CAR THAT I CAN'T DRIVE DUE TO THE CRAPPY TRANSMISSION ISSUE THAT IS AFFECTING NISSAN CAR.

**2017 Nissan Murano**

**NHTSA ID Number: 11084328 Incident Date March 19, 2018:** IN 9000 MILES, I'VE HAD THIS OCCUR 3 TIMES. IMMEDIATELY AFTER TURNING - STRAIGHTENING OUT, ACCELERATION WILL NOT KICK IN. I SEE THE RPMS GOING UP AS I AM HITTING THE GAS, BUT THE VEHICLE IS NOT GETTING ANY POWER TO THE WHEELS - I WAS ACTUALLY SLOWING DOWN FROM MY TURN INERTIA. I HAD MY CAR UP TO 5000 RPMS, BUT I WAS STILL ONLY GOING ~25-35 MPH. VERY DANGEROUS IF I PULL INTO TRAFFIC. I HAD MY VEHICLE LOOKED AT BY THE DEALERSHIP, HOWEVER SINCE THERE WERE NO CODES, THEY COULD NOT FIND ANYTHING WRONG. I CONTACTED NISSAN CUSTOMER CARE AND THEY ARE NOT INTERESTED IN TROUBLESHOOTING IF THERE ARE NO CODES. THE DATE LISTED IS APPROXIMATE.

**NHTSA ID Number: 11232729 Incident Date July 10, 2019:** VEHICLE HAS 35,700 MILES ON IT. BOUGHT THE VEHICLE JUNE OF 2018 WITH 30,000 MILES ON IT. WHILE DRIVING 55 MPH OR FASTER AND YOU GO AND TRY TO PASS SLOWER TRAFFIC WHETHER IT'S ON THE HIGHWAY OR FREEWAY AND YOU TURN THE WHEEL TO CHANGE LANES WHILE PRESSING DOWN ON THE ACCELERATOR TO SPEED UP,

THE TRANSMISSION DOES NOT DOWN SHIFT AND SPEED UP. THE RPM GAUGE INCREASES AND THE ENGINE REVS HIGH BUT THE VEHICLE DOES NOT INCREASE IN SPEED. AFTER YOU STRAIGHTEN OUT THE STEERING WHEEL THE VEHICLE ALL OF A SUDDEN DOWN SHIFTS AND TAKES OFF. IT IS DANGEROUS FOR PEOPLE PULLING OUT INTO TRAFFIC TO PASS CAUSE THE VEHICLE WILL NOT INCREASE IN SPEED AND IT LEAVES YOU TOOLING ALONG IN ONCOMING TRAFFIC. IT IS UNDER FACTORY WARRANTY AND I TOOK VEHICLE INTO THE NISSAN DEALERSHIP. I WAS TOLD EVERYTHING WAS FINE AND THERE WASN'T ANYTHING THAT COULD BE DONE BECAUSE THERE WASN'T ANY TROUBLE CODES STORED IN THE VEHICLES SYSTEM. IT DOES THIS AT LEAST ONCE PER MONTH AND NO TROUBLE LIGHTS COME ON INSIDE THE VEHICLE. I HAVE MADE MULTIPLE COMPLAINTS TO THE DEALER ABOUT THIS AND NOTHING HAS COME OF IT. I HAVE MADE MULTIPLE INQUIRIES ABOUT THIS ONLINE TO NISSAN DIRECTLY AND VEHICLE MECHANIC TYPE SITES. I HAVEN'T HEARD ANYTHING BACK FROM NISSAN THEMSELVES BUT OTHER MECHANIC TYPE SITES HAVE COME TO THE SAME CONCLUSION, IT HAS TO BE THE A COMPUTER MODULE OR TRAFFIC CONTROL SYSTEM. SOMETHING TO DO WITH THE COMPUTER SYSTEM OR MODULES THEMSELVES. NO TROUBLE CODES THEREFORE NOTHING IS WRONG, IS NISSAN'S STANCE. FOR WHAT I HAVE READ, OTHER PEOPLE HAVE HAD SIMILAR PROBLEMS WITH THIS CVT TRANSMISSIONS. THIS HAS BEEN AN ONGOING PROBLEM FOR ME AND MY FAMILY AND NISSAN HAS NOT BEEN ANY HELP, WHICH SURPRISES ME. THIS IS A SAFETY ISSUE. IF YOU PULL OUT TO PASS IN ONCOMING TRAFFIC AND THE VEHICLE WON'T ACCELERATE IT IS DANGEROUS. IF YOU PULL INTO.THE LEFT LANE ON THE FREEWAY TO PASS AND CAN'T, IT IS DANGEROUS!

**NHTSA ID Number: 11258234 Incident Date August 27, 2018:** THIS HAS HAPPEN NUMEROUS TIMES, THE TRANSMISSION A CVT HAS BIG PROBLEMS THAT HAS CAUSED MY WIFE AND I GREAT CONCERN. WHEN WE GO TO TAKE OFF AND REALLY HAVE TO STEP DOWN ON THE PEDDLE BECAUSE OF TRAFFIC FLOW. WE HAVE SEMI'S TRAVELING ON OUR ROAD AND OTHER ROADS, WHEN THIS OCCURRED THE FIRST TIME AFTER PURCHASING THE CAR WE THOUGHT IT WAS BAD GAS, BUT SINCE THEN WE HAVE BEEN IN CRITICAL SITUATIONS BECAUSE THE TRANSMISSION IS NOT WORKING. THE TRANSMISSION IN QUESTION IS VERY UNSAFE IN THIS VEHICLE IT ALMOST STOPS FOR A FEW SECONDS. WE HAVE SECONDS AWAY FROM 18 WHEELERS CRASHING INTO US, OR CARS WHERE YOU HAVE TO PULL OUT IN TRAFFIC. WHAT BOTHERS ME IS MY WIFE DRIVES THIS VEHICLE AT LEAST ONCE A DAY. SOMETIMES WITH MY DAUGHTER, AND GRANDSON. WHERE WE LIVE BIG TRUCKS HAULING WOOD TO THE PAPER MILL HAVE ALMOST CRASHED INTO US ON NUMEROUS OCCASIONS, SAME WITH CARS.SOME EVEN SHOWING ROAD RAGE WHEN MY WIFE IS MINDING HER OWN BUSINESS, AND SAME WITH ME. THIS PROBLEM HAS CAUSED US TO KNOW THAT THE TRANSMISSION IS DOING THIS ON A REGULAR BASIS. WHEN THE CAR IS IN MOTION, WE HAVE EVEN BEEN PUT IN THE MEDIUM BECAUSE OF THIS CVT PROBLEM, AND WE BELIEVE BY LOOKING ON THE WEB NOW, AND ASKING THE MECHANIC WE ALWAYS USE HAS SAID THE SAME. WE HAVE HAD THIS CAR SINCE JULY 2018. WE KNOW NOW IT ISN'T BAD GAS, OR THE INJECTORS NEEDING CLEAN, OR THE TRANSMISSION OIL NEEDING CHANGE. WE HOWEVER KNOW THAT WITH THIS SAFETY PROBLEM IT WILL BE JUST A MATTER OF TIME IF NOT US BUT SOMEONE DRIVING THIS TYPE OF VEHICLE WILL EITHER GET HURT, OR MAY START CAUSING PEOPLE TO DIE. WE LIVE RIGHT OFF OF A TWO LANE ROAD, SOMETIMES IT IS WHEN WE ARE PULLING OUT, SOMETIMES WHEN WE ARE GOING ON THE EXPRESSWAY WAY, SOMETIMES WHEN PASSING SLOWER TRAFFIC, OR ON A CITY INTERSECTION. IT ACTS AT FIRST LIKE THE ENGINE IS GOING TO STALL, SECONDS COUNT IN DRIVING, WE DON'T FEEL SAFE IN THIS CAR ANYMORE.

**NHTSA ID Number: 11376423 Incident Date January 10, 2018:** CAR HESITATES WHEN PULLING OUT INTO TRAFFIC! IF I COME TO A ROLLING STOP OR A FULL STOP AND TRY TO PULL OUT, THE CAR SEEMS LIKE IY MAY DIE BUT EVENTUALLY KICKS IN, BUT SECONDS COULD MEAN A COLLISION. MY HUSBAND SAYS HE DOES NOT EXPERIENCE THIS AND ITS MY DRIVING, BUT MY DAUGHTER HAS HAD THS HAPPEN ALSO AND I HAVE OTHERS WITNESS THIS ALSO. THIS IS AN ONGOING PROBLEM, MAKES ME AFRAID OF DRIVING MY NEW CAR.

43.     Although Defendants were aware of the widespread nature of the CVT Defect in the Class Vehicles, and the grave safety risk posed by it, Defendants took no steps to notify customers of the CVT Defect or to provide them with any relief.

44.     Customers have reported the CVT Defect in the Class Vehicles to Defendants directly and through its dealers.  As a result of these reports and its own internal testing, among other things, Defendants were fully aware of the CVT Defect contained in the Class Vehicles throughout the Class Period.  Nevertheless, Defendants actively concealed the existence and nature of the CVT Defect from Plaintiffs and the other Class Members at the time of purchase or repair and thereafter.  Specifically, Defendants:

a.      failed to disclose and/or actively concealed, at and after the time of purchase or repair, any and all known material defects or material nonconformities of the Class Vehicles, including the CVT Defect;

b.      failed to disclose and/or actively concealed, at and after the time of purchase or repair, that the Class Vehicles and their CVTs were not in good working order, were defective, and were not fit for their intended purpose; and

c.      failed to disclose and/or actively concealed, at and after the time of purchase or repair, the fact that the Class Vehicles and their CVTs were defective, despite the fact that Defendants learned of such defects as early as 2013, if not before.

45.     Defendants have deprived Class Members of the benefit of their bargain, exposed them all to a dangerous safety Defect, and caused them to expend money at its dealerships or other third-party repair facilities and/or take other remedial measures related to the CVT Defect contained in the Class Vehicles.

46.     Defendants have not recalled the Class Vehicles to repair the CVT Defect, have not offered to their customers a suitable repair or replacement of parts related to the CVT Defect free of charge, and have not offered to reimburse Class Vehicle owners and leaseholders who incurred costs for repairs related to the CVT Defect.

47.     Class Members have not received the value for which they bargained when they purchased or leased the Class Vehicles.

48.     As a result of the CVT Defect, the value of the Class Vehicles has diminished, including without limitation the resale value of the Class Vehicles.  Reasonable consumers, like Plaintiffs, expect and assume that a vehicle's CVT is not defective and will not place vehicle occupants at an increased risk of an accident.  Plaintiffs and Class Members further expect and assume that Defendants will not sell or lease vehicles with known safety defects, such as the CVT Defect, and will disclose any such defect to its customers prior to selling or leasing the vehicle, or offer a suitable repair.  They do not expect that Defendants would fail to disclose the CVT Defect to them, and continually deny the defect.

## VII.     TOLLING OF THE STATUTE OF LIMITATIONS

49.     Plaintiffs and the other Class Members were not reasonably able to discover the CVT Defect, despite their exercise of due diligence.

50.     Despite their due diligence, Plaintiffs and the other Class Members could not reasonably have been expected to learn or discover that they were deceived and that material information concerning the Class Vehicles and their continuously variable transmission was concealed from them.

51.     In addition, even after Class Members contacted Nissan and/or its authorized agents for vehicle repairs concerning the defective nature of the Class Vehicles and their continuously variable transmissions, they were routinely told by Nissan and/or through their authorized agents for vehicle repairs that the Class Vehicles are not defective.

52.     Hence, any applicable statute of limitation, if any, has been tolled by Nissan's knowledge, active concealment, and denial of the facts alleged herein.  Nissan is further estopped

from relying on any statute of limitation because of its concealment of the defective nature of the Class Vehicles and their continuously variable transmissions.

## VIII. CLASS ACTION ALLEGATIONS

53.     Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Classes and Subclasses pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of those provisions.

54.     The Classes and Subclasses are defined as:

**Nationwide Class:** All persons or entities who purchased or leased any 2015-2021 Nissan Murano vehicle in the United States.

**Massachusetts Subclass:**  All members of the Nationwide Class who purchased or leased any 2015-2021 Nissan Murano vehicle in the State of Massachusetts.

**Maryland Subclass:**  All members of the Nationwide Class who purchased or leased any 2015-2021 Nissan Murano vehicle in the State of Maryland.

**Florida Subclass:**  All members of the Nationwide Class who purchased or leased any 2015-2021 Nissan Murano vehicle in the State of Florida.

55.     Excluded from the Classes and Subclasses are: (1) Defendants, any entity or division in which Defendants have a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.  Plaintiffs reserve the right to amend the Class definitions, and to add further subclasses, if discovery and further investigation reveal that the Class and subclasses should be expanded or otherwise modified.

56.     **Numerosity:** Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.  The Class Members are readily

identifiable from, *inter alia*, information and records in Defendants' possession, custody, or control.

57.     **Typicality:** The claims of the representative Plaintiffs are typical of the claims of the Classes and Subclasses in that the representative Plaintiffs, like all Class Members, paid for a Class Vehicle designed, manufactured, and distributed by Defendants which is subject to the CVT Defect.  The representative Plaintiffs, like all Class Members, have been damaged by Defendants' misconduct in that he has incurred or will incur the cost of repairing or replacing his malfunctioning continuously variable transmission and related parts as a result of the CVT Defect.  Further, the factual bases of Defendants' misconduct are common to all Class Members and represent a common thread of fraudulent, deliberate, and/or grossly negligent misconduct resulting in injury to all Class Members.

58.     **Commonality:** There are numerous questions of law and fact common to Plaintiffs and the Classes and Subclasses that predominate over any question affecting only individual Class Members.  These common legal and factual questions include the following:

a.      whether the Class Vehicles suffer from the CVT Defect;

b.      whether the CVT Defect constitutes an unreasonable safety hazard;

c.      whether Defendants know about the CVT Defect and, if so, how long Defendants have known of the Defect;

d.      whether the defective nature of the Class Vehicles' CVT constitutes a material fact;

e.      whether Defendants had and have a duty to disclose the defective nature of the Class Vehicles' CVT to Plaintiffs and the other Class Members;

f.      whether Plaintiffs and the other Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

g.      whether Defendants knew or reasonably should have known of the CVT Defect contained in the Class Vehicles before they sold or leased them to Class Members; and

h.      whether Defendants are liable for the consumer protection, common law and warranty claims asserted herein.

59.     **Adequate Representation:**  Plaintiffs will fairly and adequately protect the interests of the Class Members.  Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

60.     **Predominance and Superiority**:  Plaintiffs and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

## FIRST CAUSE OF ACTION

(Breach of Implied Warranty, Mass. Gen. Laws Ch. 106 § 2-314, *et seq*., on behalf of the Nationwide Class and, in the alternative, the Massachusetts Subclass)

61.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

62.     Plaintiff Luz Pineda brings this cause of action on behalf of herself and the Nationwide Class and, in the alternative, the Massachusetts Subclass.

63.     Class Vehicles are "goods" and Nissan is a "seller" and "merchant" within the meaning of Mass. Gen. Laws Ch. 106, § 2-314.

64.     Plaintiff Pineda is the intended user and true consumer of the Class Vehicle that she purchased from an authorized Nissan dealership.  She used her vehicle as intended by Nissan and in a manner that was foreseeable.

65.     The implied warranty of merchantability included with the sale of each Class Vehicle means that Nissan warranted that each Class Vehicle: (a) would pass without objection in trade under the contract description; (b) was fit for the ordinary purposes for which the Class Vehicle would be used; and (c) conformed to the promises or affirmations of fact made on the container or label.

66.     The Class Vehicles are not adequately labeled because their labeling fails to disclose the Defect and does not advise consumers of the existence of the danger prior to experiencing the CVT Defect firsthand.

67.     Nissan's actions have deprived Plaintiff Pineda and Class Members of the benefit of their bargain and have caused Class Vehicles to be worth less than what Plaintiff and other Class Members paid.

68.     As a direct and proximate result of Nissan's breach of implied warranty, Class Members received goods whose condition substantially impairs their value. Plaintiff Pineda and Class Members have been damaged by the diminished value of their Class Vehicles.

69.     Plaintiff Pineda and Class Members are entitled to actual damages, including all incidental and consequential damages, resulting from Nissan's breach of the implied warranty.

## SECOND CAUSE OF ACTION

(Violation of the Maryland Consumer Protection Act, Md. Code Com. Law §§ 13-101 *et seq*, on behalf of the Nationwide Class and, in the alternative, the Maryland Subclass)

70.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

71.     Plaintiff Travis Beaver brings this cause of action on behalf of himself and on behalf of the proposed Nationwide Class and, in the alternative, the Maryland Subclass.

72.     Nissan is a "person" as that term is defined in Md. Code, Commercial Law section 13-101(H).

73.     Plaintiff Beaver, and Class Members, are "consumers" as that term is defined in Md. Code Com. Law § 13-101(C)(1).

74.     As described above, Nissan sold vehicles to Plaintiff Beaver and Class members even though the vehicles are defective and pose a safety hazard.  Nissan failed to disclose its knowledge of the CVT Defect and its attendant risks at the point of sale or otherwise.

75.     Nissan's deceptive acts and practices were willful and knowing because, as alleged above, Nissan has known about the CVT Defect for many years before it began selling Class Vehicles and chose not to disclose the problem to consumers.

76.     Despite its knowledge of the CVT Defect, Nissan chose to conceal information about the defect from Plaintiffs and other consumers.  This concealment was misleading and unfair in a material respect because the information concealed, if known, would impact the purchasing decision of a reasonable consumer.  Had Plaintiff Beaver—or any reasonable consumer—been told that the Class Vehicles contained the CVT Defect, they would not have purchased his Class Vehicle or would have paid less for it.

77.     Because Nissan did not disclose the CVT Defect, however, Plaintiff Beaver and Class Members have been deprived of the benefit of their bargain and harmed in that they now own defective and unsafe vehicles.

78.     As a direct and proximate result of Nissan's deceptive acts or practices, Plaintiff Beaver and Maryland Class Members have suffered and will continue to suffer actual damages.

79.     Because Nissan's willful and knowing conduct caused injury to Plaintiff Beaver and Class Members, they seek recovery of actual damages, discretionary punitive damages, reasonable attorneys' fees and costs, and an order enjoining Nissan's deceptive conduct, and any other just and proper relief available under Md. Code Com. Law §§ 13-101 *et seq.*

## THIRD CAUSE OF ACTION

(Violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") Fla. Stat. § 501.201, et seq. on behalf of the Nationwide Class and, in the alternative, the Florida Sub-Class)

80.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

81.    Plaintiff Altobelli brings this cause of action on behalf of herself and on behalf of the proposed Nationwide Class or, in the alternative, the Florida Subclass.

82.    Plaintiff Altobelli and members of the proposed Florida Subclass are "consumers" and "interested parties or persons" under the FDUTPA.  Fla. Stat § 501.203(6) and (7).

83.    Nissan is engaged in the conduct of "trade or commerce" as defined by FDUTPA. Fla. Stat § 501.203(8).

84.    By failing to disclose and concealing the CVT Defect from Plaintiffs and Class Members, Nissan engaged in "unfair or deceptive acts or practices in the conduct of . . . commerce" in violation of Fla. Stat § 501.204.

85.    Nissan's conduct, as described above and below, constitutes a violation of Fla. Stat § 501.204. Furthermore, Nissan's deceptive acts and practices, which were intended to mislead consumers who were in the process of purchasing and/or leasing the Class Vehicles, constitute conduct directed at consumers.

86.    Nissan knew that the Class Vehicles suffered from the CVT Defect, were defectively designed and/or manufactured, and were not suitable for their intended use.

87.    In failing to disclose the CVT Defect, Nissan knowingly and intentionally concealed material facts and breached its duty not to do so, thereby engaging in deceptive acts or practices within the meaning of the FDUTPA.

88.    Nissan's acts and practices, which were intended to result, and which did result, in the sale of defective Class Vehicles, violated the FDUTPA because:

a.    Nissan represented that its vehicles had characteristics, uses, or benefits which they do not have;

b.  Nissan advertised its goods with intent not to sell them as advertised;

c.  Nissan represented that its vehicles are of a particular standard, quality, or grade when they are not;

d.  Nissan represented that transactions (i.e., the sale of the Class Vehicles) conferred or involved rights, remedies, or obligations which they do not; and

e.  Nissan failed to disclose and concealed material information about its vehicles.

89.  As described above, Nissan sold and leased vehicles to proposed Florida Subclass Members with a known CVT Defect that endangers drivers and materially detracts from the central functionality of the vehicles.  Nissan failed to disclose its knowledge of the CVT Defect and its attendant risks at the point of sale or otherwise, realizing that warning about the CVT Defect would dissuade Class Members from purchasing and leasing the vehicles.

90.  Had Nissan not concealed and instead adequately disclosed the CVT Defect, Plaintiff Altobelli and Class Members would not have purchased or would have paid less for their vehicles.

91.  Plaintiffs also assert a violation of public policy arising from Nissan's withholding of material safety facts from consumers.  Nissan's violation of consumer protection and unfair competition laws resulted in harm to consumers.

92.  Nissan's deceptive acts or practices occurred repeatedly in Defendants' trade or business and were capable of deceiving a substantial portion of the purchasing public.

93.  As a direct and proximate result of Nissan's deceptive acts or practices, Plaintiff Altobelli and Florida Subclass Members have suffered and will continue to suffer actual damages. Because Nissan's willful and knowing conduct caused injury to Plaintiff Altobelli and Class Members, they seek recovery of actual damages, discretionary punitive damages, reasonable attorneys' fees and costs, and an order enjoining Nissan's deceptive conduct, and any other just and proper relief available under Fla. Stat § 501.211 and § 501.2105.

## FOURTH CAUSE OF ACTION

(Fraudulent Omission behalf of the Nationwide Class and, in the alternative, the Maryland, Massachusetts, and Florida Subclasses)

94. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

95. Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class and, in the alternative, the Maryland, Massachusetts, and Florida Subclasses.

96. Defendants knew that the Class Vehicles suffered from an inherent defect, were defectively designed and/or manufactured and were not suitable for their intended use.

97. Defendants concealed from and failed to disclose to Plaintiffs and Class Members the defective nature of the Class Vehicles and their CVTs.

98. Defendants were under a duty to Plaintiffs and Class Members to disclose the defective nature of the Class Vehicles' CVTs because:

a. Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' CVTs;

b. Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that their CVTs have a dangerous safety defect until after they purchased or leased the Class Vehicles;

c. Defendants knew that Plaintiffs and the Class Members could not reasonably have been expected to learn about or discover the CVT Defect prior to purchase or lease; and

d. Defendants actively concealed the defective nature of the Class Vehicles' CVTs from Plaintiffs and Class Members at the time of sale and thereafter.

99. The facts concealed or not disclosed by Defendants to Plaintiffs and the other Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Defendants' Class Vehicles or pay a lesser price for them. Had Plaintiffs and Class Members known about the defective nature of the Class Vehicles' CVTs, they would not have purchased or leased them, or would have paid less for them.

100. Defendants concealed or failed to disclose the true nature of the design and/or manufacturing defects contained in the Class Vehicles' CVTs in order to induce Plaintiffs and Class Members to act thereon. Plaintiffs and the other Class Members justifiably relied on Defendants' omissions to their detriment.

101. Defendants continued to conceal the defective nature of the Class Vehicles' transmissions even after Class Members began to report the problems. Indeed, Defendants continue to cover up and conceal the true nature of the problem today.

102. As a direct and proximate result of Defendants' misconduct, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.

103. Plaintiffs and Class Members are entitled to actual damages, exemplary damages, appropriate equitable relief as well as attorneys' fees and expenses as a result of Defendants' fraudulent conduct.

## FIFTH CAUSE OF ACTION

(Unjust Enrichment behalf of the Nationwide Class and, in the alternative, the Maryland, Massachusetts, and Florida Subclasses)

104. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

105. Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class and, in the alternative, the Maryland, Massachusetts, and Florida Subclasses.

106. As described above, Nissan sold vehicles to Class Members even though the vehicles are defective and pose a safety hazard, and Nissan failed to disclose its knowledge of the CVT Defect and its attendant risks at the point of sale or otherwise.

107. As a result of its fraudulent acts and omissions related to the CVT Defect, Nissan charged Plaintiffs and Class Members more than it otherwise could have for Class Vehicles, obtaining monies which rightfully belong to Plaintiffs and Class Members.

108.	Nissan appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and Class Members, who, without knowledge of the Defect, paid a higher price for their vehicles than those vehicles were worth.

109.	It would be inequitable and unjust for Nissan to retain these wrongfully obtained profits.

110.	Nissan's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

111.	Plaintiffs and Class Members are entitled to restitution of the profits Nissan unjustly obtained, plus interest.

## SIXTH CAUSE OF ACTION

(Breach of Implied Warranty Under Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* on behalf of the Nationwide Class and, in the alternative, the Massachusetts Subclasses)

112.	Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

113.	Plaintiff Luz Pineda brings this cause of action on behalf of herself and on behalf of the Nationwide Class and, in the alternative, the Massachusetts Subclasses.

114.	Plaintiff and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

115.	Defendants are "supplier(s)" and "warrantor(s)" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

116.	The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

117.	Defendants' implied warranty is an "implied warranty" within the meaning of 15 U.S.C. § 2301(7).

118.	Defendants breached the implied warranty by virtue of the above-described acts.

119.	Plaintiff Pineda and Class Members notified Defendants of the breach within a reasonable time and/or were not required to do so.  Defendants were also on notice of the CVT

Defect from, among other sources, the complaints and service requests they received from Class Members and their dealers.

120.   Defendants' breach of the implied warranty deprived Plaintiff and Class Members of the benefits of their bargains.

121.   As a direct and proximate result of Defendants' breach of the implied warranty, Plaintiff Pineda and the other Class Members sustained damages and other losses in an amount to be determined at trial.  Defendants' conduct damaged Plaintiff and the other Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, and costs, including statutory attorney fees and/or other relief as appropriate.

## **RELIEF REQUESTED**

122.   Plaintiffs, on behalf of themselves and all others similarly situated, request that the Court enter judgment against Defendants, and issue an order providing the following relief:

a.   certifying the proposed Class and Subclasses, designating Plaintiffs as a named representatives of the Classes, and designating the undersigned as Class Counsel;

b.   a declaration that Nissan is financially responsible for notifying all Class Members about the defective nature of the CVT in the Class Vehicles;

c.   an order directing Defendants to provide notice, in a form pre-approved by the counsel identified below, to all current owners or lessees of the Class Vehicles, and in the said notice offer to replace the defective CVT contained in every Class Vehicle with a non-defective CVT;

d.   an order directing Defendants to provide notice, in a form pre-approved by the counsel identified below, to all current owners and lessees of the Class Vehicles, of an appropriate warranty extension of the Class Vehicles' CVT and related components;

e.   an order directing Defendants to offer reimbursement to all current and former owners and lessees of the Class Vehicles, for all expenses already incurred as a result of the CVT Defect, including but not limited to repairs, diagnostics, and any other consequential and incidental damages (*e.g.* towing charges, vehicle rentals, etc.);

f.      an order directing Defendants to immediately cease the sale and leasing of the Class Vehicles at authorized Nissan dealerships nationwide without first notifying the purchasers of the CVT Defect, and to otherwise immediately cease to engage in the violations of law as set forth above;

g.      damages and restitution in an amount to be proven at trial;

h.      any and all remedies provided pursuant to the state consumer protection laws, implied warranty laws, and under common law fraud and unjust enrichment;

i.      an award to Plaintiffs and the Class of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

j.      that Defendants disgorge, for the benefit of the Class, all or part of the ill-gotten profits they received from the sale or lease of the Class Vehicles, and/or make full restitution to Plaintiffs and Class Members;

k.      an award of attorneys' fees and costs, as allowed by law;

l.      an award of pre-judgment and post-judgment interest, as allowed by law;

m.      leave to amend the Complaint to add further subclasses and to conform to the evidence produced at trial; and

n.      such other relief as may be appropriate under the circumstances.

## **DEMAND FOR A JURY TRIAL**

123.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.

DATED:  October 4, 2022                    Respectfully submitted,


                                           */s/ J. Gerard Stranch, IV*_____
                                           J. Gerard Stranch, IV (BPR 23045)
                                           Benjamin A. Gastel (BPR 28699)
                                           **BRANSTETTER, STRANCH
                                              & JENNINGS PLLC**
                                           223 Rosa L. Parks Avenue, Suite 200
                                           Nashville, Tennessee 37203
                                           Phone: 615-254-8801
                                           Fax: 615-255-5419
                                           gerards@bsjfirm.com
                                           beng@bsjfirm.com

                                           Mark Greenstone (*pro hac vice to be filed*)
                                           Benjamin Donahue (*pro hac vice to be filed*)
                                           **GREENSTONE LAW APC**
                                           1925 Century Park East, Suite 2100
                                           Los Angeles, California 90067
                                           Telephone: (310) 201-9156
                                           Facsimile: (310) 201-9160
                                           mgreenstone@greenstonelaw.com
                                           bdonahue@greenstonelaw.com

                                           *Attorneys for Plaintiff*